UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FOREIGN SERVICE ASSOCIATION, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF STATE,<br><br>*Defendant*. | Civil Action No. 24-03385 (AHA) |

**Memorandum Opinion and Order**

Three American foreign service workers and the American Foreign Service Association ("AFSA"), a professional association for foreign service employees, sue the Department of State alleging the three foreign service workers suffered brain injuries and other physical effects from their deployment, consistent with an unexplained medical condition that has become known as "Havana Syndrome." The plaintiffs argue that the Department's denial of benefits to the individual plaintiffs under the Helping American Victims Afflicted by Neurological Attacks Act of 2021 was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" in violation of the Administrative Procedure Act ("APA"). 5 U.S.C. § 706(2)(A). The Department moves to dismiss, arguing that its denials were reasonable and consistent with the law. The court concludes dismissal would be improper and denies the motion.

I.      **Background**[1]

      **A. Statutory and Regulatory Background**

In late 2016, Department employees serving at the U.S. embassy in Havana, Cuba and their family members began reporting various symptoms, including headaches, ear pain, dizziness, and hearing problems. ECF No. 1 ¶ 10. Many associated the onset of these symptoms with unusual sounds, auditory sensations, intense pressure, or pain in the head or ears. *Id.* ¶¶ 10, 12. By August 2017, there were more than twenty medically confirmed cases. *Id.* ¶ 11. As reports of these cases began to circulate, the condition came to be known as "Havana Syndrome." *Id.* ¶ 13.

Department employees in other places around the world and in the U.S. have reported similar symptoms. *Id.* ¶¶ 8–9, 17. These incidents—involving adverse health symptoms following unusual auditory or sensory events—are commonly referred to as "anomalous health incidents" or "AHIs." *Id.* ¶ 8. Over the years, more than one thousand American government employees and their dependent family members have reported AHIs. *Id.* ¶¶ 8, 19.

To compensate people affected by AHIs, Congress passed the Helping American Victims Afflicted by Neurological Attacks Act of 2021, or "HAVANA Act." Pub. L. No. 117-46, 135 Stat. 391 (2021) (codified at 22 U.S.C. § 2680b). The HAVANA Act authorizes the Department to pay a covered person—which includes Department employees, employees' family members, and other affiliated individuals—for "a qualifying injury to the brain." 22 U.S.C. § 2680b(e)(1)–(3), (i)(1)(A)–(C), (i)(2). The statute defines a "qualifying injury," in relevant part, as one incurred "in connection with war, insurgency, hostile act, terrorist activity, or other incident designated by the Secretary of State." *Id.* § 2680b(e)(4), (i)(1)(D).

---

[1]   As required at this stage, the court accepts the complaint's well-pled allegations as true and draws all reasonable inferences in the plaintiffs' favor. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

Under its implementing regulations, the Department pays covered persons for a "qualifying injury to the brain" as a non-taxable, one-time, lump-sum payment. 22 C.F.R. § 135.3(a)–(d). Similar to the statute, the regulations say that a "qualifying injury to the brain" must have "occurred in connection with war, insurgency, hostile act, terrorist activity, or other incidents designated by the Secretary of State." *Id.* § 135.2. The regulations further specify that "other incident" is defined as a "new onset of physical manifestations that cannot otherwise be readily explained." *Id.* To demonstrate a "qualifying injury to the brain," the regulations also require the claimant to show an "acute injury to the brain," a "medical diagnosis of a traumatic brain injury (TBI) that required active medical treatment for 12 months or more," or an "acute onset of new persistent, disabling neurologic symptoms . . . that required active medical treatment for 12 months or more." *Id.*

To apply for compensation, the claimant submits an eligibility questionnaire completed by an appropriate board-certified physician. *See id.* § 135.3(a)–(c), (e)(1); ECF No. 1 ¶ 33. The Under Secretary of State for Management determines whether to approve payment and, if denied, the claimant can appeal to the Deputy Secretary of State for Management and Resources. 22 C.F.R. § 135.3(f)–(g).

B. **The Plaintiffs' Requests For HAVANA Act Benefits**

The three individual plaintiffs allege they suffered AHIs while serving as foreign service workers. ECF No. 1 ¶¶ 4–6. Each applied to the Department for benefits, and each was denied. *Id.* ¶¶ 49, 51, 64, 66, 76, 78.

Plaintiff John Doe worked as an information management specialist to the U.S. consulate in Shanghai, China. *Id.* ¶¶ 36, 38. In June 2016, he awoke with a sudden onset of unexplained symptoms, including extreme dizziness, head pressure, poor balance, and nausea. *Id.* ¶¶ 39–40. In the months that followed, he continued to experience dizziness, head pressure, and difficulties with speech, balance, and memory. *Id.* ¶¶ 41–43. A Department of Labor decision approving his

3

worker's compensation claim stated that the Department of State "confirmed his likely exposure to an AHI in China in 2016." *Id.* ¶¶ 45–47. He submitted an eligibility questionnaire for benefits under the HAVANA Act, including a certification from his neurologist that the injury met the required qualifications, but his claim was denied. *Id.* ¶¶ 48–49. A letter from the Department stated that his case did not satisfy the definition of "other incident," which it defined to mean that "the individual experienced a noticeable sensory event, such as a sound, heat, or pressure sensation that occurred concurrently with or immediately preceded the identified health issues." *Id.* ¶ 49. John Doe appealed the decision, arguing that neither the statute nor the implementing regulations required him to identify a specific sensory event, but his appeal was denied. *Id.* ¶¶ 50–51. A letter from the Department again explained that his case did not meet the definition of "other incident," stating that "[t]here was no evidence or description of an external sensory event such as sound, pressure, and/or heat that occurred concurrently with or immediately preceding [his] symptoms." *Id.* ¶ 51.

Plaintiff Jane Doe 1 was a foreign service officer with the Department for over fifteen years. *Id.* ¶ 52. In the fall of 2018, she met with FBI agents regarding an individual who had been surveilling her for a prolonged period. *Id.* ¶ 54. The next night, Jane Doe 1 was studying in her living room when she felt a sharp, extremely intense, and continuous pain in her right ear and had trouble standing up. *Id.* ¶ 55. Her symptoms continued, and she was diagnosed with a rare type of nerve pain and unusual pattern of hearing loss. *Id.* ¶¶ 56–57. Jane Doe 1 submitted an eligibility questionnaire for HAVANA Act benefits, including a certification from her neurologist that she suffered an injury involving "an acute onset of new persistent, disabling neurologic symptoms" confirmed by imaging studies and requiring 12 months of treatment. *Id.* ¶ 62. The Department denied her claim, stating that "other incident" means that "the individual experienced a noticeable

sensory event, such as a sound, heat, or pressure sensation that occurred concurrently with or immediately preceded the identified health issues." *Id.* ¶ 64. Her appeal of the decision was also denied, and a letter from the Department stated that "there was no evidence or description of an external sensory event such as sound, pressure and/or heat that occurred concurrently with or immediately preceded [her] symptoms." *Id.* ¶¶ 65–66.

Plaintiff Jane Doe 2 worked as a political-economic officer in Guatemala City, Guatemala. *Id.* ¶ 67. In March 2016, she began suffering from migraines, brain fog, and debilitating insomnia. *Id.* ¶ 68. Her health continued to deteriorate, and she was diagnosed with severe bilateral hearing loss and began to struggle keeping her balance, which caused her to fall and injure her spine. *Id.* ¶ 69. The Department sent a request that Jane Doe 2 be accepted for treatment at a military medical center, noting that she "experienced an Anomalous Health Incident while deployed overseas." *Id.* ¶ 72. Jane Doe 2 submitted her eligibility questionnaire for benefits under the HAVANA Act, including a certification from her neurologist that she had been diagnosed with a traumatic brain injury requiring medical treatment for 12 months. *Id.* ¶ 75. Her claim was denied, and a letter from the Department stated that the underlying facts did not meet the definition of "other incident." *Id.* ¶ 76. In a follow-up email, the Department explained that her claim was denied because she "could not tie the hearing loss to any specific event." *Id.* Her appeal of the decision was also denied because, according to the Department, "other incident" means that "the individual experienced a noticeable sensory event, such as a sound, heat, or pressure sensation that occurred concurrently with or immediately preceded the identified health issues." *Id.* ¶ 78.

The plaintiffs filed this action to challenge the Department's denials of the individual plaintiffs' requests for benefits as "arbitrary, capricious, an abuse of discretion, and not in accordance with the law, in excess of statutory jurisdiction, authority, or limitations, or short of

statutory right, without observance of procedure required by law, as well as unwarranted by the facts" in violation of the APA. *Id.* ¶¶ 79–83. The plaintiffs ask the court to reverse the decisions denying benefits to the three individual plaintiffs, or, in the alternative, vacate the decisions and remand the matters to the Department for further proceedings. ECF No. 1 at 25. The Department moves to dismiss the case. ECF No. 16.

**II.   Discussion**

The Department argues the complaint fails to state a claim because, even assuming the truth of all the allegations, the plaintiffs have not satisfied the requirements of an APA claim. ECF No. 16 at 8–12. To survive dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court "must take all the factual allegations in the complaint as true," though it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The APA authorizes judicial review of "final agency action" and requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 704, 706(2)(A). Here, the Department does not dispute that its final decisions to deny each of the individual plaintiffs' requests for benefits under the HAVANA Act are final agency actions.

The Department instead argues that its denials of the individual plaintiffs' benefit requests were reasonable and consistent with the regulatory requirements because, even accepting all the allegations as true, the individual plaintiffs' injuries did not occur in connection with a qualifying

event under the statute and regulations. ECF No. 16 at 8–12. In particular, the Department argues that in addition to showing that the individual plaintiffs themselves experienced qualifying symptoms—namely, "[a]n acute injury to the brain," "a traumatic brain injury," or "[a]cute onset of new persistent, disabling neurologic symptoms," 22 C.F.R. § 135.2—the statute and regulations also required them to show that the symptoms occurred in connection with a qualifying event— namely, "in connection with war, insurgency, hostile act, terrorist activity, or other incidents designated by the Secretary of State," *id*.; 22 U.S.C. § 2680b(e)(4), (i)(1)(D). *See* ECF No. 16 at 9–10. The complaint relies on a connection to "other incidents designated by the Secretary of State," and the individual plaintiffs therefore had to show their injuries had a connection to a "new onset of physical manifestations that cannot otherwise be readily explained." 22 C.F.R. § 135.2; *see* ECF No. 1 ¶¶ 25, 29. According to the Department, the court can rule as a matter of law that the individual plaintiffs' claims were reasonably denied for failing to show such "physical manifestations," consistent with the denial letters stating that the individual plaintiffs had not shown they experienced "a noticeable sensory event, such as a sound, heat, or pressure sensation." ECF No. 16 at 9–12; ECF No. 21 at 5–6; *see* ECF No. 1 ¶¶ 49, 51, 64, 66, 78. The Department argues this is a "purely legal" question that the court can decide on the face of the complaint. ECF No. 16 at 7 n.2; ECF No. 21 at 5. The court disagrees that dismissal is appropriate on this basis.

To be sure, neither the plaintiffs' complaint nor their briefing is a model of clarity—they do not offer a particularly clear articulation of what challenge they bring under the APA, and they do not provide the most cogent response to the Department's argument. But, taking the allegations to be true and drawing all reasonable inferences in the plaintiffs' favor, the court cannot conclude that it was reasonable as a matter of law to deny each of the individual plaintiffs' claims for failure to show a "new onset of physical manifestations that cannot otherwise be readily explained." 22

7

C.F.R. § 135.2. According to the complaint, each of the plaintiffs experienced events that could plausibly be described as a "new onset of physical manifestations that cannot otherwise be readily explained" or, borrowing the language from the Department's denial letters, as "a noticeable sensory event, such as a sound, heat, or pressure sensation." *See id.*; ECF No. 1 ¶¶ 49, 51, 64, 66, 78. For example, the complaint alleges that Jane Doe 1's symptoms began when she experienced "a sharp, extremely intense, and continuous pain in her right ear" and "[s]he thought her eardrum was going to burst." ECF No. 1 ¶ 55. And when Jane Doe 1 appealed the denial of her request for benefits, she explained that she "was standing at the bar in [her] living room area studying when [she] felt a sharp, extremely intense continuous pain in [her] right ear area that caused [her] to be unable to stand." *Id.* ¶ 65. She added, "[m]aybe others would describe this as intense pressure, but I was not aware there were certain buzz words to describe this." *Id.* The complaint similarly alleges that John Doe awoke with a "sudden onset of unexplained symptoms" and described feelings of "head pressure" to the consulate's medical staff that same morning. *Id.* ¶¶ 39–40. And it alleges Jane Doe 2 experienced an onset of symptoms including "migraines, brain fog, and debilitating insomnia." *Id.* ¶ 68. In addition, the plaintiffs allege that the Department's submission form "does not allow the applicant to provide any other information about the incident" and that "employees are told not to provide any supplemental information." *Id.* ¶ 33; *see Michigan v. EPA*, 576 U.S. 743, 750 (2015) ("Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational."); *Teledesic LLC v. FCC*, 275 F.3d 75, 84 (D.C. Cir. 2001) (An agency must give "reasoned consideration to all of the relevant facts and issues.").

    Drawing all inferences in the plaintiffs' favor, the court cannot conclude it was reasonable as a matter of law to determine that these experiences were not a "new onset of physical

manifestations that cannot otherwise be readily explained" or "a noticeable sensory event, such as a sound, heat, or pressure sensation." 22 C.F.R. § 135.2; *see* ECF No. 1 ¶¶ 49–51, 64–66, 76–78; *see also* Implementation of HAVANA Act of 2021, 88 Fed. Reg. 4722, 4723 (Jan. 25, 2023) ("For each request for payment, the Department will review available information on the reported incident, including any investigations that may have been conducted. If the reports and the results of investigations do not provide a credible alternate explanation for the incident, that incident will be recommended for designation by the Secretary of State or their designee."). It is at least plausible based on the allegations that the Department's "explanation for its decision . . . runs counter to the evidence before the agency" or that the agency did not "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Ark Initiative v. Tidwell*, 816 F.3d 119, 127 (D.C. Cir. 2016) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).[2]

To be sure, the court reaches this conclusion on the complaint and its allegations alone, and without the full administrative record. That record may well show that the Department acted reasonably in concluding that each individual plaintiff failed to satisfy the regulations. This is not a case where the plaintiffs challenge the Department's regulations, but rather one where they challenge the criteria and standards applied to determine that their injuries did not qualify under those regulations. And as the D.C. Circuit has recognized, "to review an agency's action fairly, [the court] should have before it neither more nor less information than did the agency when it

---

[2] The plaintiffs also argue "that the very nature of the incident demonstrates that they potentially suffered from a 'hostile act' because it is suspected a foreign power deliberately targeted them." ECF No. 19 at 7 n.2. Having found that the complaint states a claim, the court need not rule on that particular argument.

made its decision." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984). As many courts have concluded in similar contexts, it will be necessary to consider the administrative record to assess the manner and reasonableness of the individual agency decisions in this case. *See Am. Bioscience, Inc. v. Thompson*, 243 F.3d 579, 582 (D.C. Cir. 2001) (concluding that the district court "should have required the FDA to file the administrative record" rather than relying "on the parties' written or oral representations to discern the basis on which the FDA" approved an application to market a drug); *Swedish Am. Hosp. v. Sebelius*, 691 F. Supp. 2d 80, 89 (D.D.C. 2010) (explaining that the court "is unable to assess the merits of [the] arguments without considering the administrative record" where "the plaintiff is challenging not only the administrative decision, but also the process that led to that decision"); *Dist. Hosp. Partners, L.P. v. Sebelius*, 794 F. Supp. 2d 162, 171–73 (D.D.C. 2011) (explaining that "review of the administrative record is necessary to a determination of whether the Secretary's methodology was arbitrary and capricious" where the claims involve "an attack on the adequacy of the Secretary's decisionmaking," rather than "a facial attack on a rule's compliance with a statute").

The court accordingly denies the Department's motion to dismiss. *See Dreamland Baby Co. v. Consumer Prod. Safety Comm'n*, No. 24-cv-3277, 2025 WL 2758476, at *8–9 (D.D.C. Sept. 26, 2025) (denying motion to dismiss APA arbitrary and capricious claim where review of the administrative records would enable the court "to assess [the plaintiff's] arguments that [the agency] either failed to consider data it possessed, or reached a conclusion counter to its assessment of that data"); *See Dist. Hosp. Partners, L.P.*, 794 F. Supp. 2d at 173 (denying motion to dismiss where the court cannot fairly review the agency's methodology without the administrative record); *Swedish Am. Hosp.*, 691 F. Supp. 2d at 89 (denying motion to dismiss APA claim where the court

cannot assess the merits of the plaintiffs' arguments without considering the administrative record).[3]

## III.  Conclusion

For these reasons, the court denies the Department's motion to dismiss, ECF No. 16.

                                                                       AMIR H. ALI
                                                                       United States District Judge

Date:  February 13, 2026

---

[3]  The Department also challenges whether AFSA has established associational or organizational standing. ECF No. 16 at 12–13. The court "need only find one party with standing." *Ams. for Safe Access v. Drug Enf't Admin.*, 706 F.3d 438, 443 (D.C. Cir. 2013). Because there is no dispute that the individual plaintiffs have standing, the court need not determine whether AFSA has standing. *See Tuaua v. United States*, 951 F. Supp. 2d 88, 93 (D.D.C. 2013), *aff'd*, 788 F.3d 300 (D.C. Cir. 2015) ("The bottom line here is clear: defendants do not allege that the individual plaintiffs lack standing, nor is there any reason for this Court to believe that they do. As such, the Court need not address the standing of [the organizational plaintiff] in order to determine whether it has jurisdiction.").